Caudill A. THOMAS, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 740.

United States District Court S. D. West Virginia, at Bluefield.

May 22, 1963.

Charles R. Smith, Bluefield, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Charleston, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to a period of disability or to disability insurance benefits under sec-

tions 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that the Secretary's decision is supported by substantial evidence; that plaintiff's motion for summary judgment should be denied; and that defendant's motion for summary judgment should be granted.

Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), provides that "As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based," and that "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." It also provides that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." The next subsection 205(h) of the Act, 42 U.S.C.A. § 405(h), expressly restricts the judicial remedy to the aforesaid manner of judicial review.

On June 29, 1961, plaintiff filed an application for disability insurance benefits and to establish a period of disability, alleging that he became unable to work in the fall of 1958, at age 40, because of an injury to his right arm.[1] This application was denied by the Bureau of Old-Age and Survivors Insurance, both initially and upon reconsideration. On July 31, 1962, a hearing examiner found that plaintiff was not entitled to disability insurance benefits or to a period of disability under the Act. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on October 9, 1962.

In order to meet the statutory definition of disability, plaintiff had to estab-

---

1. Plaintiff had previously filed an application for a period of disability on April 3, 1957, alleging that he became unable to work in April, 1956. This application was initially denied by the Bureau of Old-Age and Survivors Insurance, but he did not pursue his administrative rights with respect thereto by requesting reconsideration of that determination. Accordingly, that application is not before this court for review.

lish that he had been continuously precluded from engaging in any substantial gainful activity by a disabling impairment or impairments which began no later than September 1, 1961, for entitlement to disability insurance benefits, and on or before September 29, 1961, for establishment of a period of disability. He continued to meet the special earnings requirements until June 30, 1962.

Plaintiff was born on October 12, 1918, at Willowton, West Virginia. His principal adult occupation or employment has been in the coal mines. He began working in the mines in 1936 and with the exception of a tour of duty in the Infantry during World War II worked continuously in the mines until 1956. His mine work consisted of laying track, cutting coal, "shooting" coal, operating cutting machines, setting timbers, and loading coal.

On April 27, 1956, plaintiff was involved in an automobile accident as a result of which his right arm was crushed and his skull was fractured. He was hospitalized in the Stevens Clinic in Welch, West Virginia, until May 12, 1956. He subsequently had three operations on his right arm, the last one being performed on October 12, 1957. He took therapy treatments from November, 1956, to August, 1957. In October, 1961, plaintiff was admitted to St. Luke's Hospital where he was told that he had a stomach ulcer. He was readmitted in December, 1961, and told that he had an infected pancreas. Plaintiff entered the Veterans Administration Hospital in Richmond, Virginia, in March, 1962. There he was advised to have a cholecystectomy. He preferred not to have the operation so far away from home. He was discharged with the advice that he should seek medical attention immediately.

To discuss the detail of all the medical evidence of record would serve no useful purpose. However, for the purposes of clarity and general background, the evidence will be broadly and generally summarized below.

Two reports from the Stevens Clinic in Welch, West Virginia, show that plaintiff was hospitalized from April 27, 1956, to May 12, 1956, following an automobile accident which resulted in severe fractures and dislocations in plaintiff's right arm. Part of the treatment included an operation to correct the condition. In December, 1956, plaintiff no longer had a radial paralysis and could bend his wrist to 100 degrees (normal, 130 degrees), and could extend his right elbow to 100–105 degress (normal, 150 degrees). He could also flex his right elbow to 75–85 degrees (normal, 150 degrees).

Plaintiff also sustained a skull fracture as a result of the accident which caused him to complain of headaches. Dr. Roy M. Hoover reported on December 18, 1956, that plaintiff had a very marked limitation of motion in the fingers of his right hand and was unable to close his fist. He was of the opinion that plaintiff's right arm was one hundred per cent disabled for any practical use. He recommended intensive therapy for several months in order to secure the maximum degree of motion in the affected joints. He felt that the pins in his arm should be removed.

On March 15, 1957, the pins were removed. Plaintiff had little post-operative discomfort. The range of motion of the elbow was improved and much more comfortable. He was no longer suffering the frequent headaches. It was reported by Dr. William P. Tice on January 15, 1957 that he could find no residual neurological findings that could be attributed to a brain injury. In September, 1957, it was reported that plaintiff could move his right shoulder to within 30 degrees of the vertical on swinging the right arm forward.

On October 23, 1961, plaintiff was admitted to St. Luke's Hospital in Bluefield, West Virginia, for stomach trouble. His condition was diagnosed as a pyloric ulcer. Three days later, after treatment, he had no pain and was discharged on October 29, 1961. He was subsequently

readmitted to the hospital in December, 1961, and treated for pancreatitis (inflammation of the pancreas), among other things.

Plaintiff testified, *inter alia,* that he had done no work since April, 1956, except that he leased and operated a filling station from July, 1958, until July, 1959. He further testified that he could have kept it up, but he could not make a living out of it. The clear inference to be drawn from this testimony is that plaintiff ceased operating the filling station for financial reasons and not for physical reasons. He worked about thirty hours per week at the station, although he did testify that he could not handle the gas pumps and fix flat tires. He felt that if he could have made a living out of the station, he would in all probability have continued to operate it. He further testified that he had tried to obtain some vocational training through the State Rehabilitation Office in sheet metal work but was turned down because of his arm. He also tried to enroll in a barber school but was not accepted because of his arm.

On the basis of all the evidence of record, it appears that plaintiff in 1956 suffered a severe injury to his right arm. As a result of this injury his arm is far from normal and, indeed, is probably of little use. There is also evidence of a skull fracture resulting from the 1956 automobile accident, but the medical evidence establishes that plaintiff no longer suffers from the effects of that injury. His primary complaint goes almost entirely to his arm impairments. Certainly, the existence of a severe arm impairment does not *per se* render plaintiff unable to engage in any substantial gainful activity. Plaintiff may not be able to perform his usual mine work, but he certainly is able to perform other types of work. The evidence of record shows that plaintiff can and has engaged in other work—self-employment. He operated a filling station for one year under a lease. His apparent reason for ceasing to operate the station was financial rather than physical. Had he been able to make a financial "go" of the station, he no doubt would have continued in that business. The evidence does not indicate, nor did plaintiff state in his present application, that his stomach or pancreas troubles were the cause of his being allegedly unable to engage in any substantial gainful activity. In fact, there is absolutely no evidence of record concerning these difficulties until after the expiration of the effective period of the instant application.

The statements of several doctors that plaintiff was unable to work (which clearly are not binding on the hearing examiner, the Appeals Council, or this court) have been considered by this court in arriving at its decision, as well as all other evidence of record, both objective and subjective. On the basis of this evidence it is now found that there is substantial evidence to support the Secretary's decision that plaintiff has not established that he has impairments, either singly or in combination, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application of June 29, 1961, was effective. Substantial evidence also supports the Secretary's final decision that plaintiff is not entitled to disability insurance benefits or to a period of disability under the applicable sections of the Act, as amended. Plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.